IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY M. DAVIS, JR.,

        Plaintiff,

v.                                Case No. 12-CV-559

CINDY HARDING, et al.,

        Defendants.

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR RECONSIDERATION**

---

In its October 3, 2014 Opinion and Order (dkt. #242), the Court granted Defendants' motion for summary judgment on Davis's 42 U.S.C. § 1983 deliberate indifference claim against Defendant Dr. Rutherford in regard to Davis's acts of self-harm on January 5, 2012. The Court explained its rational for granting Defendants' motion as follows:

> While Dr. Rutherford acknowledges she performed no risk assessment after receiving the PSR advising her that Davis was having suicidal thoughts on January 5, there is nothing in the record to support a finding that this constituted more than her negligent exercise of professional judgment, not deliberate indifference. Indeed, plaintiff's expert opines no more, claiming that Rutherford['s] failure to conduct an immediate risk assessment fell short of the standard set by DOC's suicide prevention policy, rather than constituted reckless disregard of it or of the norms of psychiatric care generally. Nor is the court comfortable with leaving that question to a lay jury absent more guidance. Indeed, to do so would seem to deny penal psychologists exactly the "breathing room" the doctrine of good faith immunity is intended to create. Moreover, the court does not believe a reasonable jury could find Rutherford acted with deliberate indifference to a *known* risk that Davis would attempt suicide or otherwise engage in self-harm on January 5 on this record. *See Collins*, 462 F.3d at 761 (citing *Matos*, 335 F.3d at 557). Accordingly, both qualified immunity standards preclude Davis from proceeding on his claim against Dr. Rutherford concerning the incident that occurred on January 5.

Opinion, at 44-45. Davis respectfully requests that the Court reconsider this ruling, because there is evidence in the record, including Dr. Rutherford's own testimony, that would support a

finding that Dr. Rutherford acted in a deliberately indifferent manner in regard to a known risk that Davis would attempt suicide or otherwise engage in self-harm on January 5.

**I.   Davis has put forward evidence sufficient to support a finding that Dr. Rutherford acted in a deliberately indifferent manner to a known risk of suicide or self-harm on January 5, 2012.**

In its Opinion, the Court noted that it was "a very close question" whether Davis had met his burden to survive summary judgment in regard to his § 1983 claim against Dr. Rutherford. In concluding that he had not met his burden, the Court focused on the following:

> Rutherford (1) knew that Davis used threats of self-harm to manipulate staff; (2) while aware that he was a potential risk for self-harm, increased by recent agitation and going off of his medication, also knew that he had not acted out for three years; and (3) must exercise professional judgment in deciding how to prioritize demands on her and other staff time.

Opinion, at 44.  However, granting Defendants' motion for summary judgment on the basis of these factors is not proper, because Davis has put forward evidence that could support the alternative conclusion that Dr. Rutherford knew that he posed a risk of self-harm or suicide on January 5 and deliberately disregarded that risk by failing to assess him for risk of suicide and take reasonable steps to address the risk that he presented.  *See, e.g.*, *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) ("At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.").

In particular, the following evidence, when viewed in the light most favorable to Davis, is sufficient to support Davis's § 1983 claim against Dr. Rutherford:

- Dr. Rutherford admitted that prior to January 5, she viewed Davis as a risk of self-harm or suicide.  Rutherford Dep., dkt. #220, at 56:21-25.

2

- On January 3, Dr. Rutherford had a meeting with Davis during which he was very upset and told her that he intended to commit suicide by January 8 or sooner. Davis also told Dr. Rutherford that he had stopped taking his lithium, which she understood to indicate an increased risk of an actual suicide attempt or self-harm incident. Rutherford Dep., dkt. #220, at 87:15-88:5.

- On January 4, Dr. Rutherford emailed Davis's treatment team and communicated that despite Davis's "history of threatening suicide and not following through with any attempt" and his use of this "to manipulate staff into meeting his needs," Davis's recent threats of suicide "could be serious." Rutherford therefore requested that staff "be observant of his demeanor and behavior in the upcoming days to determine his need for obs placement." She also noted that Davis understood that she would "continue to check in with him." Rutherford Decl., Ex. C, dkt. #101-3, at 2-3.

- On the morning of January 5, Davis communicated to Dr. Rutherford that he was having "suicidal thoughts." Rutherford Decl., Dkt. #101, ¶ 18.

- Dr. Rutherford admitted that she viewed this type of communication as "urgent" and requiring an "immediate" response, which would include an assessment of suicide risk. Rutherford Dep., Dkt. #220, at 67:1-18.

- Nevertheless, despite this characterization of the nature of Davis's communication and despite her conclusion that Davis's threats of suicide could be serious and her promise to Davis that she would continue to check in with him, Rutherford did not respond to Davis's communication regarding his suicidal thoughts by checking in with him and assessing his risk for suicide but instead proceeded to meet with a previously scheduled patient. Rutherford Dep., dkt. #220, at 99:1-100:20; Opinion, at 44.

- Dr. Rutherford knew that Davis "would become very upset" if he asked to speak with a psychologist and "that person did not come right away." Rutherford Dep., dkt. #220, at 72:7-17.

- While Dr. Rutherford was meeting with the other patient, she received multiple communications from staff that Davis was acting in a strange and distraught manner. Rutherford Dep., Dkt. #220, at 102:10-21; Hans Dep., Dkt. #192, at 52:12-15; Hans Decl., Dkt. #93, ¶ 7.

- Dr. Rutherford admitted that these communications led her to conclude that Davis was not okay waiting to meet with her. Rutherford Dep., dkt. #220, at 103:2-19.

- Despite this conclusion, however, Dr. Rutherford did not discontinue her meeting with her other client to check in on Davis and assess his risk for suicide, even though there was adequate time for her to do so prior to his eventual acts of self-harm. Davis Supp. Decl., Dkt. #221, ¶ 8.

In sum, this evidence is sufficient to support a conclusion that Dr. Rutherford was deliberately indifferent to a known risk of self-harm or suicide when she initially failed to assess Davis in response to his communication regarding his suicidal thoughts. Rutherford's own testimony establishes that this was the type of communication that she understood to require an immediate assessment for risk of suicide, but it is undisputed that she did not conduct such an assessment. Further, the evidence outlined above would permit a jury to infer that on January 5, Rutherford had a subjective understanding that Davis posed a significant risk of suicide or self-harm. In addition, the evidence is also sufficient to support a conclusion that Dr. Rutherford was deliberately indifferent to a known risk of self-harm or suicide when she subsequently failed to break off her scheduled appointment to check in with Davis and assess him for risk of suicide

4

after she, by her own admission, concluded that he was no longer okay waiting to meet with her. Therefore, based on this evidence, Davis respectfully requests that the Court reconsider its decision to grant Defendants' motion for summary judgment in regard to his § 1983 claim against Dr. Rutherford.

**II.    The Court's stated rational for granting Defendants' motion for summary judgment in regard to Davis's § 1983 claim against Dr. Rutherford does not merit that result.**

As noted, in granting Defendants' motion for summary judgment with regard to Davis's § 1983 claim against Dr. Rutherford the court concluded that Davis had not put forward sufficient evidence, including sufficient expert testimony, that Dr. Rutherford's conduct rose to the level of deliberate indifference, as opposed to mere negligence, and the Court noted that allowing Davis's claims to proceed "would seem to deny penal psychologists exactly the 'breathing room' the doctrine of good faith immunity is intended to create." Opinion, at 45. In addition, the Court concluded that Davis had not put forward sufficient evidence for a finding that "Dr. Rutherford acted with deliberate indifference to a *known* risk that Davis would attempt suicide or otherwise engage in self-harm on January 5." Opinion, at 45. For the reasons discussed below, Davis respectfully requests that the Court reconsider these conclusions.

In regard to the first issue, the evidence outlined above is sufficient to support a finding of deliberate indifference in regard to both Dr. Rutherford's initial decision not to assess Davis for risk of suicide or self-harm on January 5 and her subsequent decision not to intervene after she admittedly concluded that Davis was no longer okay to wait to meet with her. Moreover, these claims could be supported on the basis of Dr. Rutherford's own testimony. Specifically, Dr. Rutherford's testimony establishes that the risk assessment that she failed to provide was a required response in regard to the type of communication that Davis made regarding his suicidal thoughts. Her testimony also establishes that she actually concluded that there was a need for

5

her to check in with Davis based on reports from staff regarding Davis's behavior, but she did not do so despite their being adequate time for her to intervene before his acts of self-harm.

Therefore, because Davis's § 1983 claim against Dr. Rutherford could be supported by Dr. Rutherford's own testimony, it does not make sense to refuse to permit the claim to go forward on the basis that Davis did not present sufficient expert testimony.  In addition, it does not seem that allowing Davis's claim against Dr. Rutherford to proceed would undermine the concept of "breathing room," when Davis's has put forward evidence to show that Dr. Rutherford failed to follow through with the actions that *she herself* had concluded were necessary.  While the concept of "breathing room" might provide psychologists with flexibility in determining, on the basis of their professional judgment, which course of action is appropriate, it does not insulate psychologists from a failure to follow through on a course of action that they have determined to be necessary and appropriate.

In addition, while Davis's § 1983 claim against Dr. Rutherford could be independently supported by Dr. Rutherford's own testimony, Davis maintains that the testimony that he has presented from his expert witness, Dr. Woods, is also sufficient to support the claim.  Dr. Woods testified that the need to assess in response to a suicidal thought or gesture is "one of the absolute bedrock onuses that we [psychologists] accept."  Woods Dep., dkt. #200, at 110:8-12.  Further, Dr. Woods testified that the fact that Dr. Rutherford was interacting with Davis in the context of WRC did not relieve her of the obligation to provide the assessment.  Woods. Dep., dkt. #200, at 160:17-25 ("I would say the onus of assessment and response is the same, independent of context.").  Consistent with this testimony, in her initial report, Dr. Woods explained that "mental health practitioners and staff in particular, have a clear mandate to respond when someone in their care or responsibility displays risk factors and/or warning signs of potential

6

suicidal behavior" and that "[t]he two most critical mandates are to assess and intervene." Woods Report, dkt. #188, at 8. In her report, she also outlined the framework for these mandates based on the general principles applicable to psychologists. Woods Report, dkt. #188, at 8-9. And, in regard to the January 5 incident specifically, Dr. Woods concluded that "adequate assessment, as required by general sound judgment and DAI protocol specifically, was not immediately provided." Woods Report, dkt. #188, at 11; *see also* Woods Dep., dkt. #200, at 113:17-21 (explaining that Dr. Rutherford exhibited "less than acceptable clinical judgment" in her interactions with Davis on January 5).

Therefore, although the Court characterized Dr. Woods' opinions Regarding Dr. Rutherford's conduct on January 5 as being based only on the DOC's suicide prevention policy, Opinion, at 44-45, her report and her deposition testimony demonstrate that her opinions are based on both WRC policies and professional standards of practice. Further, her testimony supports a conclusion that Dr. Rutherford's conduct in responding to Davis on January 5 failed to meet the requirements of both applicable policy and professional standards of practice.

In regard to the second issue (whether Davis has put forward evidence sufficient to establish that Rutherford was responding to a *known risk* of suicide or self-harm on January 5), the Court relied on the Seventh Circuit's analysis of this issue in *Collins v. Seeman*, 462 F.3d 757 (7th Cir. 2006) (citing *Matos v. O'Sullivan*, 335 F.3d 553 (7th Cir. 2003)). However, the analysis of both *Collins* and *Matos* indicates that Davis's evidence in this case is sufficient to support a finding that Dr. Rutherford was responding to a known risk of suicide or self-harm.

In *Collins*, the court addressed deliberate indifference claims against four defendants in regard to an incident in which an inmate committed suicide. Before committing suicide, the inmate had requested to see a crisis counselor to discuss his suicidal thoughts. This request was

7

communicated to the counselor, but the reason for the request (i.e., suicidal thoughts) was not, and the inmate committed suicide before the counselor saw him. In regard to three of the defendants, the court concluded that the plaintiff could not establish a known risk because although they had been aware of his request to see a crisis counselor, "they were not informed of the reason for the request." *Collins*, 462 F.3d at 761. The court found that the evidence showed that requests to see a crisis counselor were made for various reasons not related to suicide, and, therefore, "a request to see a crisis counselor, standing alone, is not sufficient to put a defendant on notice that an inmate poses a substantial and imminent risk of suicide." *Id.* As such, the court granted summary judgment in favor of the three defendants who were not made aware of the reason for the inmate's request to see a crisis counselor, because there was no evidence to establish a known risk in regard to those defendants.

The court explained, however, that the fourth defendant was "in a different position because [the inmate] specifically told him that he was feeling suicidal." *Id.* The court therefore did not conclude that the evidence was not sufficient to establish a known risk in regard to this defendant. Rather, the court granted summary judgment in favor of this defendant on the basis that the evidence of his response to the inmate's mention of suicidal thoughts precluded a finding of deliberate indifference. *Id.* at 762. Thus, the fact that there was evidence in the record that the inmate had communicated his suicidal thoughts to one of the defendants prevented the court from concluding that the evidence was insufficient to support a finding of a known risk in regard to that defendant.

Here, Davis has put forward evidence that shows that he communicated to Dr. Rutherford on January 5 that he was having suicidal thoughts. Further, he has put forward evidence that Dr. Rutherford heard reports from other staff regarding his behavior on January 5 that led her to

8

conclude that he was not okay waiting to meet with her.  Given this evidence, *Collins* supports a conclusion that Dr. Rutherford should not be entitled to summary judgment on the basis that Davis has failed to put forward evidence sufficient to support a finding that she was deliberately indifferent to a *known risk* of suicide or self-harm.

*Matos* further supports this conclusion.  Like *Collins*, *Matos* considered whether a plaintiff had put forward sufficient evidence at the summary judgment stage to support a finding that there was a known risk of suicide.  The court concluded that the plaintiff had failed to meet this burden for two reasons:  (1) the evidence established that "Matos never told any of the defendants that he felt suicidal or depressed beyond his control," and (2) "not one of the defendants who interviewed or examined Matos—each of whom was trained in psychology, social work, medicine, or crisis response—ever determined after seeing him that he exhibited suicidal or delusional tendencies or that he needed to be placed on crisis or suicide watch." *Matos*, 335 F.3d at 557.  Here, in contrast, Davis has put forward evidence on both of these issues.  It is undisputed that Davis communicated to Rutherford on January 5 that he was having suicidal thoughts.  Further, Davis has put forward evidence to that Rutherford had concluded prior to January 5 that he posed a risk of suicide or self-harm and that leading up to January 5 Rutherford considered this risk to be serious enough that there was a need for her and other staff to monitor Davis's demeanor and behavior for purposes of determining whether an observation placement was necessary to protect against a risk of suicide or self-harm.  Given this evidence, the court's analysis in *Matos* indicates that Davis should be permitted to proceed on his § 1983 claim against Dr. Rutherford because he has put forward evidence that could support a finding that Dr. Rutherford was responding to a known risk of suicide or self-harm on January 5.

**Conclusion**

For the reasons stated above, Davis respectfully requests that the Court reconsider its decision to grant Defendants' motion for summary judgment on his § 1983 claim against Dr. Rutherford regarding his January 5, 2012 incident of self-harm and that he be permitted to proceed to trial on that claim.

Dated this 13th day of October, 2014.

>BOARDMAN & CLARK LLP
>By:
>
>  /s/ Andrew N. DeClercq
>Paul R. Norman, State Bar No. 1033159
>Andrew N. DeClercq, State Bar No. 1070624
>One South Pinckney Street, 4th Floor
>Madison, WI 53701-0927
>Telephone (608) 257-9521
>
>*Attorneys for Jeffrey M. Davis, Jr.*